UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| YOSEF DAVIS, Individually and on behalf of all others similarly situated, | : | Case No.: |
| | : | |
| **Plaintiff,** | : | |
| | : | Judge: |
| vs. | : | |
| | : | |
| KABA ILCO CORP. | : | |
| 400 Jeffreys Road | : | |
| Rocky Mount, North Carolina 27804 | : | |
| | : | |
| KABA CORPORATION | : | |
| 400 Jeffreys Road | : | |
| Rocky Mount, North Carolina 27804 | : | |
| | : | |
| KABA FINANCE CORPORATION | : | |
| 1201 North Market Street | : | **CLASS ACTION COMPLAINT** |
| Wilmington, Delaware 19801 | : | |
| | : | |
| KABA BENZING AMERICA | : | **DEMAND FOR JURY TRIAL** |
| 3015 North Commerce Parkway | : | |
| Mirama, Florida 33025 | : | |
| | : | |
| KABA U.S. HOLDING LTD. | : | |
| 1201 North Market Street | : | |
| Wilmington, Delaware 19801 | : | |
| | : | |
| KABA DELAWARE, LLC | : | |
| 1201 North Market Street | : | |
| Wilmington, Delaware 19801 | : | |
| | : | |
| KABA AG | : | |
| Muhlebuhlstrasse 23 | : | |
| Kempten, 8623 | : | |
| Wetzikon, Switzerland | : | |
| | : | |
| KABA HOLDING AG | : | |
| Hofwisenstrasse 24 | : | |
| CH-8153 | : | |
| Ruemlang, Switzerland | : | |
| | : | |
| **Defendants.** | : | |

## CLASS ACTION COMPLAINT

Plaintiff Yosef Davis, individually and on behalf of all others similarly situated, and based upon his own personal knowledge and belief, as well as investigation undertaken by his counsel, alleges as follows:

## NATURE OF THIS ACTION

1.      Locks have one purpose – to provide security to those persons or contents within the room, house or building secured by the Lock.  The very purpose for the purchase of a Lock—a valid sense of security—is destroyed when there is any defect in the Lock that causes it to not perform in the intended manner.  Thus, Locks are different from almost any other consumer product.  When the Lock does not provide the full and expected measure of security, it is essentially without any value or utility.  And, as a result of that lack of security, the purchasers of the defective Lock have not received the expected value of the Lock for which they paid a premium purchase price.

2.      This lawsuit is about defective Locks.  In particular, Defendants are involved in the business of designing, manufacturing, marketing and selling certain mechanical pushbutton Locks which are defective.

3.      As detailed below, those Locks contain a flaw in design and manufacture that causes them to not provide the full measure of security intended.  (Plaintiffs shall use the term "design" herein throughout to include design and manufacture).  In particular, the Locks can be opened with commercially available magnets.  Being able to open the Locks without inputting the required combination renders the Locks ineffective and unfit to perform the safety function for which they were designed and purchased.  As it relates to this lawsuit, this defect deprives plaintiff and class members of the value spent for purchase of the Locks and has required of many putative class members expenditures to

restore the safety they sought in purchasing KABA Locks, thereby creating in plaintiffs a right to recover the cost to replace or repair the Locks to meet merchantable standards.

4.      Plaintiff brings this proposed class action on behalf of a class of persons and entities who or which purchased certain push button Locks manufactured by KABA and which contains the flaw as described below.

## PARTIES

**Plaintiff**

5.      Plaintiff Yosef Davis is a citizen of Illinois.

**Defendants**

6.      KABA Ilco Corp. (at times "KABA") is a corporation organized under the laws of the state of North Carolina, with offices at 400 Jeffreys Road, Rocky Mount, North Carolina 27804.

7.      KABA is a wholly owned subsidiary of KABA Corporation.

8.      KABA Corporation, a corporation existing under the laws of the state of Connecticut with its principal place of business located at 400 Jeffreys Road, Rocky Mount, North Carolina 27804, is a wholly owned subsidiary of KABA Finance Corporation.

9.      KABA Finance Corporation, a corporation existing under the laws of the state of Delaware with its principal place of business located at 1201 North Market Street, Wilmington, Delaware 19801 is a wholly owned subsidiary of KABA Benzing America.

10.      KABA Benzing America a corporation existing under the laws of the state of Florida with its principal place of business located at 3015 North Commerce Parkway, Miramar, Florida 33025 is a wholly owned subsidiary of KABA U.S. Holding Ltd.

11.      KABA U.S. Holding Ltd., a foreign corporation existing under the laws of the United Kingdom, is jointly held by KABA Delaware, LLC and KABA AG.

3

12.     KABA Delaware, LLC, a limited liability corporation existing under the laws of the state of Delaware with its principal place of business located at 1201 North Market Street, Wilmington, Delaware 19801 is a wholly owned subsidiary of KABA AG.

13.     KABA AG, a corporation existing under the laws of Switzerland with its principal place of business located at Muhlebuhlstrasse 23, Kempten, 8623 Wetzikon, Switzerland, is a wholly owned subsidiary of KABA Holding AG.

14.     KABA Holding AG is a publicly owned corporation existing under the laws of Switzerland with its principal place of business located at Hofwisenstrasse 24, CH-8153, Ruemlang, Switzerland.

15.     The corporate structure referenced in ¶¶ 28-36 will hereinafter be referred to as "KABA," the "KABA Defendants" of "Defendants."

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.

17.     Venue is proper in this District under 28 U.S.C. § 1391(a) because the plaintiff resides within it and Defendants caused harm to class members residing in this District.

## FACTS COMMON TO THE CLASS

### Overview of the problems/defect with some of KABA's pushbutton Locks.

18.     The KABA Defendants are involved in the business of designing, manufacturing, marketing and selling mechanical pushbutton Locks. Instead of inserting a key, users enter a numeric code to open these Locks. Authorization is checked on a purely mechanical basis. Because they require neither keys nor electric power, pushbutton Locks are particularly suitable for convenient access control solutions. The Locks are installed on doors and require—or are intended to require--the user to input the

appropriate combination to open the Lock.

19.     KABA is the leader in the mechanical pushbutton Lock segment of the access control market.  Over a period of forty years, pushbutton Locks have evolved to become the industry standard for "keyless entry" in standalone Locks and are available in three categories:  Primary, Auxiliary and Specialty.

20.     Primary pushbutton Locks are heavy-duty commercial grade and are often found in institutional heavy-use environments such as universities, airports, hospitals, and government buildings.

21.     Auxiliary pushbutton Locks are used in conjunction with a primary Lock and are typically found in light commercial or industrial low-use, less demanding applications and private residences.

22.     Specialty pushbutton Locks are most common in original equipment manufacturer ("OEM") Lock applications such as cabinets or toolboxes, gun safes and medical carts.

23.     In particular, the Defendants produce pushbutton Locks under the names Unican and Simplex, *inter alia*, Series 1000/L1000, 2000, 3000, 5000, 6000, 6200, 7000, 7100 and 8100. (These Lock models are referred to individually as the "Lock" and collectively as the "Locks.")  A definitive listing of relevant models and their defects will be provided following appropriate discovery and class certification briefing.

24.     The Locks contain a serious design flaw.  In particular, the Locks can be opened by affixing a magnet to the outside of the Locks, which manipulates the Lock's internal mechanism—the *combination chamber*—and allows the Lock to be opened with ease and, most importantly, without inputting the necessary or correct combination. At this time Plaintiff is advised that all of the Series of KABA Locks mentioned in ¶ 23 above are subject to magnetic manipulation as alleged herein.

25.      The size of the requisite magnet is small enough to fit in the palm of the hand, thus allowing any petty criminal or other interested person easy access to any area

5

whose access is supposed to be restricted by the Locks.

26.     By reason of the aforesaid defect, Locks were more dangerous than ordinary consumers would expect when used in their intended or reasonably foreseeable manner.

27.     KABA was aware of criminal activities, *i.e.* break-ins by means of magnetic manipulation of Locks, prior to the commencement of this litigation, but did nothing to warn the public of this known danger until long after being sued on the premises hereof, at which time KABA made undisclosed efforts to provide an upgrade kit to be installed at victim expense.  KABA has documented its concerns for years prior to the commencement hereof as to the magnetic manipulation of its Locks, but failed to take reasonable measures to warn the public or remedy the defect, except as disclosed in this paragraph.

28.     Each of the aforementioned Locks manifested the flaw in design at the time of their manufacture and sale, continuing until the present time. As a result of the flaw, the plaintiffs did not receive the benefit of the bargain and the Locks must now be repaired or replaced.

29.     The susceptibility of magnetic manipulation of Push Button Locks ("PBLs") has been known within the Lock manufacturing industry for many years.

In fact, there are specific American National Standard Institute ("ANSI") standards, published under the auspices of the Builders Hardware Manufacturer's Association, recognized throughout the legal and business communities as industry norms. The capability of pushbutton Locks capable to withstand magnetic "attack" is addressed in ANSI/BHMA Standard A156.30-2003, described by BHMA as: "**Magnet Resistance Test:** Using a standard 150lb pulling force magnet . . . the cylinder is manipulated for a duration of two minutes in an attempt to open the cylinder. Application of the magnet shall not cause the locking device to unlock at any time."

http://www.buildershardware.com/standards/A156_30.pdf    **This test, which KABA's Locks subject of suit do not satisfy, is the least demanding of three (3)** levels of performance benchmarks under ANSI/BHMA A 156.30.   The Supreme Court of the United States and every Circuit Court in the country recognizes ANSI standards as evidence of industry norms.

### Misrepresentations by KABA

30.  KABA represents that with over 145 years of experience, it is one of the oldest and largest suppliers of access control products in the world.

31.    KABA markets the Simplex line of Locks as a security device and represents that the Simplex lines of mechanical pushbutton Locks offer a convenient way to control access between public and private areas.   www.KABA.com; *see also* KABA Simplex® Brochure.[1]

32.    KABA further represents that "KABA's complete line of Simplex® light commercial and *residential Locks provide the same added security features you find in our complete line of heavy-duty Locks.*"   KABA Simplex® Brochure at 7. At all times relevant there was on the market in the United States mechanical pushbutton Locks impervious to magnetic manipulation, including some manufactured by KABA.

33.    KABA extols features of its pushbutton Locks with assurances of "no keys or cards to manage, no computers to program, no batteries to replace, and combinations can be changed in seconds without removing the Lock from the door."[2]

---

[1]    The KABA Simplex® Brochure is available for download at: http://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=1&ved=0CEoQFjAA&url=http%3A%2F%2Fcoremedia.KABA-ilco.com%2Faccess-control%2Fliterature_grid%2Faccess_download.aspx%3FFile%3Dsimplex_brochure_kaa_1014.pdf%26Attachment%3DTrue&ei=I73wT6PpJIjv0gHx8837Ag&usg=AFQjCNHy3IoUc9lY78sRUXG6qzaI6FDohA

[2]    *See*  http://www.KABA-ilco.com/KABA-access-control/Products/Product-Selector-Find-the-Right-Lock/292664/simplex-mechanical-pushbutton-Locks.html

34.     KABA advertises and markets to the consuming public that the Simplex line of Locks has "a long history with 40 years in the marketplace, Simplex mechanical pushbutton Locks continue to be the durable, reliable choice for many facility managers today."  KABA Simplex® Brochure at 4.

35.     KABA further maintains that the "Locks are *dependable*, easy to maintain, and flexible to meet the needs of today's fast-paced environment."  KABA Simplex® Brochure at 4.

36.     The features KABA highlights about its pushbutton Locks are that these "Locks are equipped with PIN access; mechanical push button Lock; *single access code* and are ANSI/BHMA Grade 1 Certified." *See* http://www.KABA-ilco.com/KABA-access-control/Products/Product-Selector-Find-the-Right-Lock/292664/simplex-mechanical-pushbutton-Locks.html

37.     Defendants further represent that the Simplex line of Locks meet certifications and standards including, but not limited to:

    a.     Americans with Disabilities Act (ADA);

    b.     ANSI/BHMA 156.2, Grade 1 Certification; weather resistant, wear tested for extensive use in indoor and outdoor application; and

    c.     3-hour UL/ULC fire rating for "A" label doors.  KABA Simplex® Catalog at 9.[3]

38.     KABA further represents that the Simplex Locks:

    a.     Provide "*Security*—without the headache of key management." *See* KABA Simplex® Brochure at 3.

    b.     Mechanical pushbutton Locks are a great solution for

---

[3] The Simplex® *Catalog* is a distinct document from the Simplex® Brochure.  The Catalog is available at: https://www.taylorsecurity.com/UserFiles/file/simplex_5000_catalog_section_kaa_1026.pdf

controlling access between public and private areas. *See* KABA Simplex® Brochure at 3.

  c. The Locks are ideal for locations with regular personnel turnover, like data processing centers, employee entrances, research labs, *apartment complexes*, and dormitories. *See* KABA Simplex® Brochure at 3.

  39. KABA represents that their PBL's perform nicely in conjunction with other security access systems*, or as stand-alone security alternatives in smaller building applications.* KABA Simplex® Brochure at 3. Further Defendants represent that the "1000 family *a tried and true way to protect your assets. The heavy-duty locks in this family* [which KABA elsewhere equate with residential applications] offers *are dependable, reliable, and flexible enough to fit any security need in airports, apartment buildings, college dorms, or manufacturing plants.* KABA Simplex® Brochure at 6.

  40. Defendants represent and market that their "7100 and 6200 series *can also be used alone, or with another Lock in residential applications.* Optional model features include spring latch and deadbolt. The rugged all-metal construction is weather resistant, *providing added strength and durability.*" KABA Simplex® Brochure at 7.

  41. Defendants represent and market that their "E-Plex 2000 series makes it easy to get the security and convenience of electronic access control without any hassle or complication" and represents that it is "BMHA Grade 1 Certified." KABA E-Plex Brochure at 1.[4]

  42. Defendants claim that their Locks are the preferred product of choice for facilities around the globe including healthcare, government, education, residential and

---

[4] The E-Plex Brochure is distinct from the Simplex® Brochure and the Simplex® Catalog. In addition to being attached hereto, it is available for download at: http://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=2&ved=0CHIQFj AB&url=http%3A%2F%2Fcoremedia.KABA-ilco.com%2Faccess-control%2Fliterature_grid%2Faccess_download.aspx%3FFile%3De2000_brochure_kaa_ 1074.pdf%26Attachment%3DTrue&ei=6SnzT8-2EoLu0gGGvfDVCQ&usg=AFQjCNG-RzK9ift3Wu_6-9yHQ3yZs3dcAg

commercial facilities.

### The truth about KABA's pushbutton Locks.

43.     Despite promises of being "durable," "reliable," "dependable," providing "security," being a "tried and true way to protect assets" and providing "unparalleled strength," the KABA Locks can easily be opened by affixing a magnet to the outside of the Locks, which manipulates the internal mechanism allowing the Lock to be opened with ease and without inputting the correct combination.

44.     Also, prior to the commencement of any litigation KABA had actual knowledge of reported break-ins that occurred as a result of magnetic manipulation of Locks.

45.     KABA also admits to having actual knowledge of the susceptibility of magnetic manipulation since at least August 15, 2010.

46.     However, KABA took no action to inform suppliers or end-users of the Locks, or of the risk of unwanted entry by use of a magnet, until being sued and having numerous related actions consolidated for pretrial purposes by the Judicial Panel on Multidistrict Litigation in the Northern District of Ohio.

47.     KABA also took no action to ensure that the unsafe pushbutton Locks would not continue to be sold after August 15, 2010 and has not adequately informed consumers or provided installation of an adequate fix to consumers.

### NAMED PLAINTIFF'S EXPERIENCE WITH KABA PUSH BUTTON LOCKS

48.     Plaintiff Yosef Davis owns both a Series 7100 for his residence and a L1000 for his commercial premises.

49.     Plaintiff Davis has taken steps to effectuate replacement of the aforementioned defective Locks with non-defective Locks at his sole cost and expense.

50.     Plaintiff brings this action on behalf of himself and all others similarly situated, as members of the proposed Class, under Civil Rule 23.  The requirements of Rule 23 subparts 23(a) and 23(b)(2) and (3) are met with respect to the Class defined below.

## CLASS ACTION ALLEGATIONS

51.     Named Plaintiffs seek to represent a Classes, described as follows:

> During the fullest period allowed by law, all persons who purchased a Lock primarily for personal, family or household purposes, and not for resale, in Illinois, KABA Unican or Simplex Series 1000/L1000, 2000, 3000, 5000, 6000, 6200, 7000, 7100 and 8100 and E-Plex 2000 Series Locks.

> The Class excludes:  (1) any Defendant, any entity in which any Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; (2) persons or entities that distribute or sell the subject Locks; (3) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (4) Class Counsel; and (5) claims for personal injury, wrongful death, and/or emotional distress.

52.     Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

53.     **Numerosity/Impracticability of Joinder**:  The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes thousands of members.  The precise numbers of members can be ascertained through discovery, which will include Defendants' sales, warranty service, and other records.

54.     **Commonality and Predominance**:  There are common questions of law and fact that predominate over any questions affecting only individual members of each Class.  For example, KABA has unilaterally published notice since the commencement of litigation similar hereto, addressed to the owners of all Series 7000/7100PBL's that do

not have an "S" imprinted on the bottom, offering an upgrade kit- upon request. Such action taken by KABA demonstrates the substantial identity of all putative class members as litigants herein. Moreover, common legal and factual questions, include, but are not limited to the following aspects of "material defect:"

a.  Whether the Locks are susceptible to magnetic manipulation; and

b.  Whether the Class Members were deprived of the benefit of their bargain when they purchased the Locks; and

c.  Whether Defendants represented to consumers, impliedly or expressly that the      Locks were fit for their intended    use; and

d.  Whether Defendants omitted material information concerning the risks associated with the Locks; and

e.  Whether Defendant violated applicable consumer protection statutes; and

f.  Whether the Defendants concealed information and the nature of the defects    from the Class Members; and

g.  Whether the Defendants engaged in unfair business practices; and

h.  Whether the Defendants engaged in deceptive business practices; and

i.  Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently; and

j.  The amount of revenues and profits Defendants received and/or the amount of monies or other obligations lost by Class Members as a result of such wrongdoing; and

k.  Whether Class Members are entitled to declaratory, injunctive

and other equitable relief and, if so, what is the nature of such relief; and

l.      Whether the disassembly, replacement of the chamber cover and re-installation of PBL's, which is a "fix" KABA has developed since the commencement of this litigation, together with the cost thereof, is fairly susceptible of ascertainment;

m.     Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief;

n.     Whether Class members are entitled to disgorgement, etc.

55.    **Typicality**: The representative Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and all Class members have been injured by the same wrongful practices of Defendants. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

56.    **Adequacy**: Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiff nor his attorneys have any interests contrary to or conflicting with the Classes.

57.    **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the

13

expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Further, individual members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of multiple trials of the same factual and legal issues. In addition, Defendants have acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

58. Plaintiff does not anticipate any difficulty in the management of this litigation.

59. Defendants have, or have access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

## TOLLING AND ESTOPPEL

60. Plaintiff's cause of action did not arise until Plaintiff discovered, or by the exercise of reasonable diligence should have discovered, that he was injured by Defendants' wrongful conduct as explained above. Because Defendants concealed and did not disclose the fact that the Locks had a defective design, Plaintiff did not discover and could not have discovered this fact through reasonable diligence.

61. The applicable statutes of limitations have been tolled by Defendants'

knowing and active concealment of the material facts that the Locks have a defective design and by Defendants' affirmative warranties and misrepresentations that the Locks were "reliable," "dependable," "durable," and similar representations. Defendants intentionally kept Plaintiffs and the members of the Class ignorant of vital information essential to pursue their claims, without any fault or lack of diligence on the part of Plaintiffs and the members of the Class. Plaintiffs and the members of the Class could not reasonably have discovered the fact that Locks are vulnerable to magnetic penetration as hereinbefore described.

62. Defendants were and are under a continuous duty to disclose to Plaintiff and the members of the Class the true character, quality, and nature of the Locks. At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Locks, including the fact that the Locks can easily be opened by affixing a magnet to the outside of the Locks, which manipulates the internal mechanism allowing the Lock to be opened with ease and without inputting the correct combination. Plaintiff and the members of the Class reasonably and in good faith relied upon Defendants' affirmative misrepresentations and knowing, affirmative, and/or active concealment. Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action. Defendants are also estopped from relying on any statutes of limitation in defense of this action because it did not repair these known defects prior to placing Locks in the stream of commerce.

## COUNT 19 (Illinois Class)

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**(801 Ill. Comp. Stat. 5/2-314 and 5/2A-212)**

63. Illinois Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

64. KABA is and was at all relevant times a merchant with respect to the Locks.

65. A warranty that the Locks were in merchantable quality and condition is implied by law pursuant to 801 Ill. Comp. Stat. 5/2-314 and 5/2A-212.

66. KABA impliedly warranted that the Locks were of good and merchantable condition and quality – fit and safe for their ordinary intended use.

67. The Locks were defective at the time they left the possession of KABA. These defects include the fact that the Locks can be opened with a commercially available magnet without inputting the required combination. KABA knew of these defects at the time these transactions occurred. Thus, the Locks, when sold and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

68. By virtue of the conduct described herein and throughout this Complaint, KABA breached the implied warranty of merchantability.

69. Illinois Plaintiffs and the Illinois Class members have been damaged as a direct and proximate result of KABA's breach of the implied warranty.

70. Illinois Plaintiffs have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of KABA or by operation of law in light of KABA's unconscionable conduct.

71. In addition, KABA has received, on information and belief, reports of break-ins and other breaches of its Locks.

72. Privity is not required in this case because Illinois Plaintiff and the Illinois Class members are intended third-party beneficiaries of any agreements or contracts KABA may have with others; specifically, they are intended beneficiaries of KABA's

16

implied warranties.

73.     Illinois Plaintiffs have had sufficient dealings with either KABA or its agents to establish privity of contract under Illinois law.  Notwithstanding this, privity is not required in this case because Illinois Plaintiffs and the Illinois Class members are intended third-party beneficiaries of contracts between KABA and its dealers; specifically, they are intended beneficiaries of KABA's implied warranties.  The middlemen who received express warranties from KABA were not intended to be the ultimate consumers of the Locks and have no rights under the warranty agreements provided with the Locks. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

74.     As a direct and proximate result of KABA's breach of warranties, Illinois Plaintiff and the Illinois Class were caused to suffer economic damage, including loss attributable to the diminished value of their Locks, as well as the monies spent and to be spent to repair and/or replace their Locks.

## DEMAND

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, respectfully requests judgment against KABA:

(a)     Certifying the Class and appointing Plaintiff and his counsel to represent the Classes;

(b)     Ordering KABA to provide notice to the Class and of the defective Locks;

(c)     Ordering KABA to promptly repair and/or replace all defective Locks and related  defects free of charge;

(d)     Awarding damages which include but are not limited to diminution of value;

(e)     Awarding pre-judgment and post-judgment interest to the extent appropriate;

(f)     Awarding attorneys' fees and costs; and

(g)     Awarding such other relief as this Court may deem just and proper.


DATED: August 28, 2012                    Respectfully submitted:

                                          *s/ Hunter J. Shkolnik*
                                          Hunter J. Shkolnik
                                          Hunter@NapoliBern.com
                                          **NAPOLI BERN RIPKA SHKOLNIK**
                                          350 Fifth Avenue
                                          New York, NY 10118
                                          Telephone: (212) 267-3700
                                          Facsimile: (212) 587-0031



                                          ___/s/ Steven  M. Aroesty_____
                                          Steven M. Aroesty, #6194869
                                          **NAPOLI BERN RIPKA SHKOLNIK**
                                          241 North Main Street
                                          Edwardsville, IL 62025
                                          Phone:  (618) 364-8176
                                          SAroesty@NapoliBern.com



                                          *Counsel for Plaintiff*